IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDUL JANNEH, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WESTGATE HILL SNF LLC, | : | No. 15-2012 |
| *Defendant*. | : | |

PRATTER, J.                                                                                              DECEMBER 21, 2015

MEMORANDUM

I.  INTRODUCTION

Abdul Janneh, a former licensed practical nurse at Westgate Hills SNF, LLC ("Westgate"),[1] a rehabilitation and nursing center, sued Westgate, Christine O'Reilly (Director of Nursing), Aril Ball-Garham (supervising nurse), and Shontae Durieux (supervising nurse) alleging race/nationality discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964, as well as a state law negligent hiring and supervision claim.  Generally, Mr. Janneh alleges that the Defendants discriminated against him and others because they are black and immigrated from Sub-Saharan Africa.  The alleged discrimination included the eventual termination of Mr. Janneh's employment.  Westgate moves to dismiss Mr. Janneh's Complaint with prejudice.

For the reasons discussed in greater detail below, the Court concludes that Mr. Janneh's claims are barred by the doctrine of claim preclusion, as they should have been brought when he

---

[1] The Complaint and Docket have the Defendant named as "Westgate Hill, SNF, LLC," however, based on the briefing submitted by both parties, it appears that the correct name is "Westgate Hills, SNF, LLC."

1

filed similar, if not the same, claims in state court in 2014.  As a result, Mr. Janneh's claims against Westgate are dismissed with prejudice.

## II.     ALLEGATIONS IN THE COMPLAINT[2]

Mr. Janneh began working at Westgate as a licensed practical nurse in 2007.  In late 2011, Westgate hired Ms. O'Reilly.  As of that hiring, Ms. O'Reilly had allegedly been fired by three previous employers due to falsification of documents and harassment.  Shortly after being hired by Westgate, Ms. O'Reilly replaced two nurses who were immigrants with Defendants Ball-Garham and Durieux, neither of whom had greater experience or credentials than the nurses they replaced.

Mr. Janneh alleges that Ms. O'Reilly consistently discriminated against and harassed foreign-national employees.  In early May, 2012, Mr. Janneh and others complained about Ms. O'Reilly's conduct to their union representative.  Following these complaints, Ms. O'Reilly, Ms. Ball-Garham, and Ms. Durieux falsely accused Mr. Janneh of not attending to his patients.  In March or April of 2013, Mr. Janneh sent a confidential email to Ms. O'Reilly informing her that the wound team had not properly dressed a patient's wound.  Ms. O'Reilly then told the wound team about Mr. Janneh's complaint, resulting in the harassment of Mr. Janneh by the wound team.  On April 27, 2013, Ms. O'Reilly wrongfully accused Mr. Janneh of failing to administer medication to a patient.  In addition, Mr. Janneh claims that Ms. O'Reilly, Ms. Ball-Garham, and Ms. Durieux have "repeatedly told Westgate Hill residents that they hate Africans and that Africans stink."  (Compl. at ¶ 27).

---

[2] The factual summary is based on the allegations in the Complaint, which the Court assumes to be true for purposes of the motion on the pleadings.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

On October 17, 2013, Mr. Janneh wrote a grievance to the compliance unit of Westgate, located in Charlotte, North Carolina. Six days later, Mr. Janneh was called in for a meeting with Administrator Herschel Schwartz, during which Mr. Janneh was told that he was being suspended without pay because his grievance had been "observed all over his nursing station that day." (Compl. at ¶ 31). Mr. Janneh alleges that he could not have been the one who left the grievance at the nursing station because he was out sick on October 22, 2013 and was not due to return to work until late on October 23, 2013. Nevertheless, and despite surveillance camera footage that did not show Mr. Janneh anywhere near the nursing station, Mr. Janneh was fired on November 7, 2013 for "unauthorized use of a computer and distributing materials at work." (Compl. at ¶ 38). Before Ms. O'Reilly was hired, Mr. Janneh had never been cited for any misconduct, insubordination, or policy violations at Westgate.

Mr. Janneh's complaint alleges four causes of action: (1) unlawful discrimination based on race/national origin in violation of Title VII of the Civil Rights Act of 1964; (2) unlawful discrimination based on retaliation in violation of Title VII of the Civil Rights Act of 1964; (3) unlawful discrimination based on hostile work environment in violation of Title VII of the Civil Rights Act of 1964; and (4) negligent hiring and supervision.

### III.   PROCEDURAL BACKGROUND

#### A.   Equal Employment Opportunity Commission

Following his initial suspension, Mr. Janneh filed a charge of discrimination (Charge No. 530-2014-00090 ("First Charge")) with the Equal Employment Opportunity Commission ("EEOC") on October 25, 2013. (Def.'s Br. Ex. A). The First Charge alleged discrimination based on national origin as well as retaliation due to Mr. Janneh's October 17, 2013 grievance

complaining of Ms. O'Reilly's discrimination. *Id*. The EEOC issued a right-to-sue letter to Mr. Janneh on December 3, 2014. (Def.'s Br. Ex. B).

Following his employment termination, Mr. Janneh filed a second charge of discrimination (Charge No. 530-2014-00223 ("Second Charge")) on November 8, 2013. (Def.'s Br. Ex. C). The Second Charge alleged that the termination was unlawful retaliation, in violation of Title VII, for the filing the First Charge. *Id*.

### C. State Court Action

While the EEOC Charges were pending, Mr. Janneh filed a pro-se complaint against Westgate Rehabilitation and Nursing in the Delaware County Court of Common Pleas in the Commonwealth of Pennsylvania on November 15, 2013. (Def.'s Reply Ex. C). He then filed an amended complaint on December 4, 2013. Id. The amended complaint alleged similar violations to those in his initial complaint, including negligent hiring, harassment, discrimination, and retaliation for the initial complaint to Mr. Janneh's union in 2012. (Def.'s Br. Ex. F). Westgate removed the case to the Eastern District of Pennsylvania on December 12, 2013. (Case No. 13-7256, Docket No. 1). On January 28, 2014, the district court dismissed Mr. Janneh's federal claims and remanded the state claims to the state court. (Case No. 13-7256, Docket No. 12).

Westgate then filed preliminary objections to the initial complaint and amended complaint for failing to plead legally and factually sufficient claims, as well as for a failure to properly comply with the Pennsylvania Rules of Civil Procedure. On May 12, 2014, the state court sustained Westgate's preliminary objections without prejudice, inviting Mr. Janneh to file and properly serve a second amended complaint within thirty days. (Def.'s Br. Ex. G).

Mr. Janneh filed a second amended complaint on August 13, 2014, well outside the thirty-day limit given by the state court. (Def.'s Br. Ex. H). Among the claims asserted in the second amended complaint were harassment, negligent hiring, and wrongful termination. *Id*. Westgate responded by filing preliminary objections to the second amended complaint. (Def.'s Reply Ex. C). On October 28, 2014, the state court sustained Westgate's preliminary objections and dismissed the second amended complaint. *Id*. On February 19, 2015, the state court issued an opinion rejecting Mr. Janneh's appeal of the decision and explaining the reasoning behind the dismissal. (Def.'s Reply Ex. A). The court based the dismissal on both procedural grounds (failing to file the second amended complaint within thirty days of the court's order) and substantive grounds (failing to state a claim). *Id*.

Mr. Janneh filed a notice of appeal with the Superior Court of Pennsylvania on December 18, 2014, however he failed to timely file his appellant brief and subsequently abandoned the appeal. (Def.'s Reply Ex. B).

Mr. Janneh, now represented by counsel, filed this Complaint on April 8, 2015. The parties submitted briefing on this Motion. The Court scheduled oral argument for October 13, 2015, however plaintiff's counsel failed to appear for the argument. On November 4, 2015, the Court ordered supplemental briefing on a narrow issue not addressed in the initial briefing (Docket No. 16). While Westgate submitted a timely brief, Mr. Janneh failed to submit a brief.[3]

---

[3] While not attached to Mr. Janneh's Complaint, the Court will consider the EEOC Charges and corresponding right-to-sue letters, the state court opinion, and other documents filed on the Delaware County Court of Common Pleas civil docket sheet, No. 2013-011343, available at http://roam.co.delaware.pa.us/delco/search.do?indexName=docketcase&templateName=case&lq=CASE_NUMBER%3A%222013-011343%22. *See* Fed. R. Civ. P. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). As the Third Circuit Court of Appeals has stated,

**III.    DISCUSSION**

Westgate advances four arguments as to why Mr. Janneh's Complaint should be dismissed with prejudice: (1) all four counts are barred by claim preclusion, as they arise from the same operative facts as the claims made in state court, and thus, should have been brought when Mr. Janneh filed his complaint in state court; (2) the majority of the Title VII claims are time-barred as Mr. Janneh filed this Complaint more than 90 days after receiving the right-to-sue letter from the EEOC; (3) the doctrine of issue preclusion bars the negligent hiring and supervision claim, as it has already been adjudicated on the merits in state court; and (4) Mr. Janneh fails to state a plausible claim for relief in regards to the negligent hiring and supervision claim as well as the retaliation claim.  Because the Court holds that all of Mr. Janneh's claims are barred by the doctrine of claim preclusion, it will not address the remaining arguments advanced by Westgate.

---

> To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.
>
> Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (citations omitted); *see also, Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967) ("[A] federal court may take judicial notice of matters of record in state courts within its jurisdiction. . . ." (citing *Berkowitz v. Phila. Chewing Gum Corp.*, 303 F.2d 585, 587 (3d Cir. 1962)).

Additionally, the Court may consider "any 'matters incorporated by reference or integral to the claim.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed.2004)). Thus the Court may consider the EEOC charges and right-to-sue letters, as they are integral to Mr. Janneh's claim.  *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) (holding, "It is clear to us that under the applicable legal standard we may consider the EEOC charge and related EEOC documents . . . either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one summary judgment").

6

### A. Claim Preclusion[4]

Generally, the doctrines of claim preclusion and issue preclusion "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d 166, 174 (3d Cir. 1982) (quoting *Allen v. McCurry*, 449, U.S. 90, 94 (1980)). "Moreover, when applied by a federal court to give preclusive effect to a state court judgment, '[claim and issue preclusion] not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system.'" *Id.*

While neither party briefed the issue under Pennsylvania law, the Full Faith and Credit Statute, 28 U.S.C. § 1738, encompasses the doctrine of claim preclusion, thus, "[t]o determine the effect of a Pennsylvania court judgment, we are required to apply Pennsylvania's claim . . . preclusion law." *R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 670 F.3d 420, 426 (3d Cir. 2011).

Under Pennsylvania law, "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." *Id* at 427 (quoting *Balent v. City of Wilkes–Barre*, 669 A.2d 309, 313 (Pa. 1995)). The doctrine bars not only claims that were brought, *but also claims that could have been brought*. *Id*. For claim preclusion to apply, Pennsylvania law requires the two actions to share four conditions: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." *Id*. (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72, 74 (Pa. 1974)).

---

[4] The doctrine of claim preclusion is sometimes referred to in the caselaw as *res judicata*.

As an initial matter, Pennsylvania law requires the prior judgment relied upon by the movant, Westgate, to be on the merits. While Mr. Janneh argues that this requirement is not met because his claims asserted in state court were not adjudicated on the merits, but rather were dismissed for violation of procedural rules, "where a party fails to follow court orders and as a result its case is dismissed, res judicata applies even though there was no judicial decision finally addressing and adjudicating the merits of the case." *McCarter v. Mitcham*, 883 F.2d 196, 200 (3d Cir. 1989) (citing *Dunham v. Temple Univ.*, 432 A.2d 993, 999 (Pa. Super. Ct. 1981)).[5]

### i. The Thing Sued Upon or For

Generally, the first requirement, that "the thing sued upon or for" is the same in both actions, is met when the same act or occurrence underlies both actions. *See Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988).

Two unpublished cases are particularly persuasive due to their similar factual and procedural histories. In *Rouse v. II-VI Inc.*, No. 2:06-CV-566, 2008 WL 2914796, at *8 (W.D. Pa. July 24, 2008), the court dealt with nearly an identical procedural history as here. *Id*. at *2-4 (*aff'd,* No. 08-3922, 2009 WL 1337144 (3d Cir. May 14, 2009)). The plaintiff was terminated by his employer and subsequently filed a charge of discrimination with the EEOC. *Id*. at *3. While his EEOC charge was pending, the plaintiff filed a complaint in state court asserting claims for "intentional infliction of emotional distress, negligence with respect to his performance appraisals, negligent supervision, negligent failure to investigate, intentional interference with a prospective employment relationship, negligent retention, negligent training, and negligent failure to provide a safe working environment." *Id*. The state court dismissed the plaintiff's complaint in its entirety. *Id*. The plaintiff then appealed, but abandoned the appeal by failing to

---

[5] Additionally, the state court decision dismissing Mr. Janneh's claims went into a thorough discussion of the merits of most if not all of the claims asserted.

file a brief. *Id*. After his state court complaint was dismissed, the plaintiff filed a complaint in federal court alleging violations of Title VII, the Age Discrimination Employment Act, the Pennsylvania Human Relations Act, as well as discrimination and retaliation claims under § 1981 and §1985(3). *Id*. at *4-5. In granting summary judgment for the defendants on the discrimination and retaliation claims under § 1981 and §1985(3),[6] the court found that the first requirement of claim preclusion was met because the same decision to terminate the plaintiff was the basis for both actions, even though no specific claims of discrimination were asserted in the state court action. *See id*. at *8.

Similarly, in *Callaghan v. Haverford Twp.*, No. 1544 C.D. 2010, 2011 WL 10845813, (Pa. Commw. Ct. July 25, 2011), the court found that claim preclusion barred the plaintiff's claims. *Id*. at *8. In *Callaghan*, the plaintiff initially filed claims in federal court under the Americans with Disabilities Act ("ADA") and the Pennsylvania Whistleblower Law, and subsequently filed a state court action asserting violations of the Family Medical Leave Act of 1993 and a cause of action under the defendant township's Home Rule Charter. *Id*. at *1. The court held that the first condition of claim preclusion was met because "both cases involve[d] [the plaintiff's] employment claims with [the defendant] for the same period of time under the same circumstances." *Id*. at *3.

In this case, the subject matter forming the basis of the two actions is the alleged harassment and discrimination experienced by Mr. Janneh while employed at Westgate, retaliation against Mr. Janneh for his complaints about the discrimination, Mr. Janneh's alleged wrongful termination, and the alleged negligent hiring of Ms. O'Reilly. While Mr. Janneh's

---

[6] The defendants did not argue that claim preclusion barred the plaintiffs Title VII, Age Discrimination Employment Act, and Pennsylvania Human Relations Act claims, thus the court declined to opine as to whether those claims would also be precluded. *Id*. at *15 n.19.

Complaint in this case is more specific in framing Westgate's alleged wrongful conduct as discrimination based on race and national origin, Mr. Janneh's second amended complaint in the state court action included allegations of harassment, discrimination, retaliation, wrongful termination, and negligent hiring. The two cases "involve [Mr. Janneh's] employment claims with [Westgate] for the same period of time under the same circumstances." Like the courts in *Rouse* and *Callaghan*, this Court finds that "thing sued upon or for" in both of Mr. Janneh's actions is the same.

    **ii.**  **The Cause of Action**

In regards to the requirement that the two lawsuits share the same cause of action, "rather than resting upon the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *McArdle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993) (quoting *In re Jones & Laughlin Steel Corp.*, 477 A.2d 527, 531 (Pa. Super. Ct. 1984)). In determining whether the two lawsuits share a single cause of action, courts may consider the similarity of the acts complained of, the demand for recovery, and the similarity of witnesses, documents, and facts alleged. *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 (3d Cir. 2006).

Claim preclusion cannot be avoided "solely because a number of different legal theories deriving from a specific incident are used to assert liability." *Gregory*, 843 F.2d at 117. The "cause of action" remains the same "although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Id*. (quoting Restatement (Second) of Judgments § 24, Comment c (1982)). In *Gregory*, an ex-police officer filed an action in state court challenging the decision of a township council that upheld his discharge from the police force. *Id*. at 113-14. The state court upheld the council's decision despite the plaintiff's

10

allegations that members of the council were biased against him politically. *Id*. at 114. The plaintiff then filed an action in federal court alleging that members of the council had conspired to have him discharged for exercising his First Amendment rights. *Id*. at 115. The district court granted summary judgment to the defendants, partially on claim preclusion grounds. *Id*. In ruling that the second requirement of claim preclusion had been met, the Third Circuit Court of Appeals "brush[ed] aside technicalities to uncover the nub of the controversy," and stated, "Distinct causes of action do not arise merely because the motivations alleged in the two forums differ. Nor, as we have observed, is it critical that one is based on federal law and the other on state law." *Id*. at 118.

In this case, Mr. Janneh argues that claim preclusion should not apply because his race and national origin were not at issue in the state court action. Furthermore, Mr. Janneh argues that the retaliation claim in state court asserted that he was suspended due to his filing of an internal grievance, while his retaliation claim in this case asserts that he was terminated due to his filing of a discrimination claim with the EEOC.

In response, Westgate argues that courts take a broad view when examining whether two cases are based on the same cause of action. In both lawsuits, Mr. Janneh makes claims for negligent hiring. The hostile work environment and discrimination claims are based on the same facts as the state claims already adjudicated (mistreatment by Ms. O'Reilly, Ms. Ball-Garham, and Ms. Durieux related to Mr. Janneh's race, ultimately concluding with his termination). In regards to the retaliation claim, Westgate argues that even though Mr. Janneh asserts that the state court claim was based on retaliation related to his internal grievance letter and the retaliation claim in this case is based on retaliation related to his EEOC charge, the two retaliation claims are strikingly similar, if not the same.

The Court finds that the two lawsuits share the same "cause of action" for the purposes of claim preclusion. Similar to *Gregory*, Mr. Janneh cannot avoid claim preclusion by simply asserting a different motivation for the same alleged wrongdoing. Additionally, even if Mr. Janneh is correct in pointing out the differences between the retaliation actions, the second amended complaint in the state court action certainly alleged wrongful termination. Thus, Mr. Janneh could have asserted both retaliation claims in that action. Claim preclusion bars not only claims that were raised, but also those that could have been raised. Therefore, the second requirement of claim preclusion has been met.

### iii. The Persons or Parties to the Action

The third requirement is clearly met. In Mr. Janneh's state court action he sued Westgate, just as he has in this case. Thus, the two actions involve the same "persons and parties to the action."

### iv. The Capacity of the Parties to Sue or be Sued

As an initial matter, Pennsylvania law requires the court which entered the original judgment to have had subject matter jurisdiction over the claims asserted (or unasserted, as is the case here). *See Turner*, 449 F.3d at 550. The state court in this case had subject matter jurisdiction over, and could have heard Mr. Janneh's unasserted Title VII claims. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 826 (1990) (holding that state courts have concurrent jurisdiction over Title VII claims).

Additionally, there is an issue as to whether or not Mr. Janneh had the capacity to bring his Title VII claims when he brought his action in state court because he had not yet received his right-to-sue letter from the EEOC. Westgate argues that the holding in *Churchill v. Star Enterprises*, 183 F.3d 184 (3d Cir. 1999) stands for the proposition that Mr. Janneh was required to expedite the process of obtaining his right-to-sue letter or alternatively request a stay in his

state court action so that all of his claims could be brought at once. While Westgate correctly characterizes the holding in *Churchill*, that court was examining the effect of a prior federal court judgment, thus applying federal law. *Id*. at 187.

It appears as though no court applying Pennsylvania law has directly addressed this issue. *See Rouse*, 2008 WL 2914796, at *15 n.19 (noting, "There is some authority supporting the idea that [plaintiff] would have been obliged to [include his Title VII claims in his first action] if at all possible, and that his failure to do so should result in such claims being barred by the doctrine of res judicata" (citing *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tennessee,* 126 F.3d 849, 851 (6th Cir. 1997))).

In *Churchill*, the plaintiff initially brought claims that her employer had violated the Family and Medical Leave Act when they discharged her. 183 F.3d at 188. The lawsuit went to trial, where the plaintiff prevailed. *Id*. Two months later, the plaintiff filed claims against the same defendants under the ADA and similar state statutes. *Id*. The ADA, like the Title VII, under which claims are brought in this case, requires an exhaustion of administrative remedies, including a right-to-sue letter from the EEOC, before a plaintiff may file a complaint in court. *Id*. at 190. The court in *Churchill* observed that a plaintiff may request a right-to-sue letter from the EEOC 180 days after filing a charge. *Id*. (citing 42 U.S.C. § 2000e-5(f)(1)). Thus, the fact that the plaintiff was still waiting for a right-to-sue letter did not prohibit the application of claim preclusion because the plaintiff could have requested the letter in time to bring all her claims at once. *Id*. at 194-95. Alternatively, the plaintiff could have requested a stay in her initial case in order to wait for her right-to-sue letter. *Id*. Because the plaintiff failed to take these actions, she "sat on her rights," and was precluded from asserting the claims. *Id*. at 191.

The majority of circuits, primarily applying federal law, have come to the same conclusion regarding an ADA or Title VII plaintiff's duty to expedite the process of obtaining a right-to-sue letter or to request a stay in order to bring all claims at once. *See Wilkes v. Wyoming Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 505 (10th Cir. 2002), *as amended* (Jan. 14, 2003); *Havercombe v. Dep't of Educ. of Com. of P.R.*, 250 F.3d 1, 8 (1st Cir. 2001); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 715 (9th Cir. 2001); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000); *Heyliger*, 126 F.3d at 856 (applying Tennessee law); *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 225 (7th Cir. 1993); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 40 (2d Cir. 1992). Mr. Janneh has not cited (nor has the Court discovered) any cases which hold to the contrary.

Additionally, nothing specific to Pennsylvania's claim-preclusion law indicates that Pennsylvania courts would reach a different result. Indeed, Pennsylvania courts have long held that claim preclusion bars not only claims that were previously asserted, but also "claims which could have been litigated during the first proceeding." *Balent*, 669 A.2d at 313. As the federal courts have concluded, requiring a plaintiff in Mr. Janneh's position to seek a right-to-sue letter or request a stay in his case is not an "onerous burden." *Churchill*, 183 F.3d at 193.

In this case, Mr. Janneh had the opportunity to either expedite the process of obtaining his right-to-sue letter from the EEOC or request a stay in his state court proceeding. Even using the date of his Second Charge (November 8, 2013), Mr. Janneh could have requested a right-to-sue letter on May 7, 2014. The state court's order of May 12, 2014 invited Mr. Janneh to file a second amended complaint within thirty days. Therefore, Mr. Janneh had a clear opportunity to request his right-to-sue letter and obtain it in time to add his Title VII claims to his second

14

amended complaint. Mr. Janneh failed to do so and also failed to request a stay in his state court action. Thus, Mr. Janneh "sat on [his] rights."

Because Mr. Janneh had the same capacity to sue in his state court action as he does in this case, the fourth requirement of claim preclusion has been met.

## IV. CONCLUSION

The claims asserted in Mr. Janneh's Complaint are barred by claim preclusion. All four requirements have been met, and Mr. Janneh could and should have brought these claims in his state court action. For the foregoing reasons, the Court grants Westgate's Motion to Dismiss with prejudice.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE